IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANKLIN COLON                    :            CIVIL ACTION
                                  :
        v.                        :
                                  :
GERALD ROZUM, et al.              :            NO. 11-3921

MEMORANDUM

Dalzell, J.                                          January 7, 2014

 Franklin Colon ("Colon" or "petitioner") is a prisoner at the State Correctional Facility at Forest, in Forest County, Pennsylvania.  He filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his custody.  The Hon. Linda K. Caracappa, to whom the matter was referred for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).  Judge Caracappa recommended denial of the habeas petition and Colon raised three objections.  For the reasons that follow, we will sustain Colon's objection regarding denial of his Confrontation Clause rights and issue a conditional writ of habeas corpus to free petitioner from custody until his retrial, if any, by the Commonwealth.

I.   **Factual and Procedural Background**

 On the evening of October 29, 2001, three men drove to the Lehigh Valley Mall and parked in an isolated area reserved for Macy's employees.  Tr. at 72.  Colon, the driver, turned off the engine and stayed in the car, listening to the radio.  Gonzalez Stmt.  at 77-78.  The other two, Eliut Betancourt ("Betancourt") , who was armed with a handgun, and Joey Gonzalez ("Gonzalez"), got out and headed for the entrance to Macy's, where they loitered for fifteen or twenty minutes.  Id.  at 4.  They then followed an exiting shopper to her car when they tried to carjack her.  Trial Ct. Op. at 3.  A struggle ensued and two shots rang out, killing the shopper.

Id. at 4. Betancourt and Gonzalez ran back to their car and the three men drove off.  Id.

A few days later, Betancourt turned himself in and confessed to the crime, leading police to Gonzalez and Colon.  Id.  Subsequently, Betancourt pleaded guilty in March of 2003 to murder in the first degree, robbery-theft of a motor vehicle, robbery and criminal conspiracy, and was sentenced to life imprisonment.  See Colon Am. Pet. at 9.  He did not testify against the other two men.

In October of 2002, Gonzalez and Colon were tried together (after Gonzalez's initial guilty plea aborted a month before) in a jury trial before the Honorable Edward D. Reibman of the Court of Common Pleas of Lehigh County.  Report and Recommendation ("R&R") at 6. Judge Reibman denied Colon's pre-trial motion to sever.  Lehigh County Dkt.  pg. 11.  Neither defendant testified.  Toward the conclusion of trial, the prosecutor read into the record statements each defendant had made earlier to the police, prefaced by the judge's cautionary instruction to the jury that "[a] statement made before trial may be considered as evidence only against the defendant who made that statement."  Tr. at 844.  With respect to petitioner's co-defendant, the judge further instructed the jury, "You must not use the Gonzalez statement in any way against Mr. Colon."  Id.  The jury charge included similar limitations.  Id. at 1277-1278.

On October 10, 2002, petitioner was found guilty of second-degree murder, robbery and criminal conspiracy to commit robbery.  R&R at 1.  On November 25, 2002, Colon  was sentenced to a term of life imprisonment for second-degree murder, a concurrent term of not less than forty-five months nor more than one hundred and eight months for robbery, and a term of not less than thirty-three months nor more than seventy-two months for criminal conspiracy, to run concurrently with the second-degree murder sentence but consecutive to the sentence for

robbery.  Id. at 1-2.

On March 7, 2003, the judge denied Colon's motion for post-sentence relief.  Id. at 2.
Colon appealed to the Superior Court alleging the trial court erred by: (1) failing to sever his trial
from Gonzalez's trial, either before or after Gonzalez's aborted guilty plea; (2) admitting
Gonzalez's redacted confession during the joint trial; (3) failing to permit the use at trial of an
allegedly exculpatory statement made by Gonzalez during Gonzalez's aborted guilty plea
proceeding; (4) failing to suppress Colon's statements; and (5) permitting the admission of
testimony at trial regarding the use of the murder weapon by Betancourt in another crime several
weeks prior to the crime at issue here.  Id.

The Superior Court affirmed Colon's conviction on March 30, 2004 in a published
opinion, Commonwealth v. Colon, 846 A.2d 747 (Pa.Super. 2004).  The Pennsylvania Supreme
Court subsequently denied petitioner's request for allowance of appeal.  R&R at 2.

The procedural history thereafter has little bearing on the habeas petition before us, so we
condense it to reflect only that Colon took the steps necessary to exhaust his state remedies as
required prior to filing a petition for writ of habeas corpus.  On January 10, 2006, Colon filed a
petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 et seq., and the Court
dismissed the counselled PCRA petition on March 11, 2008.  Id.  Colon filed a notice of appeal
to the Superior Court on April 8, 2008, followed by a pro se brief in support of his appeal.  Id.
With newly-appointed counsel, he filed a PCRA appeal to the Superior Court.  Id.  On April 7,
2011, the Superior Court affirmed the PCRA dismissal, and counsel did not appeal to the
Pennsylvania Supreme Court.  Id. at 3.

Colon filed the instant petition on June 6, 2011 in the United States District Court for the

3

Western District of Pennsylvania, and it was transferred to this District on June 15, 2011.[1] Id. Counsel for petitioner sought and was granted a stay of this petition in order to exhaust petitioner's state-court remedies. Id. The Pennsylvania Supreme Court denied Colon's petition for allowance of appeal on December 12, 2012, and Colon petitioned to have the stay lifted on the habeas petition. Id. Judge Caracappa also on January 9, 2013 granted Colon leave to amend his habeas petition. Id.

Colon's amended habeas petition raised four claims: (1) the trial court erred in not admitting Gonzalez's allegedly exculpatory statements made during his aborted guilty plea proceeding; (2) the trial court erred in not suppressing Colon's statements made during his interrogation -- a claim he subsequently abandoned, see dkt. no. 21 at 11; (3) the trial court erred in not granting severance which denied him a fair trial and his right to confrontation; and (4) trial counsel was ineffective for failing to properly object to evidence -- introduced through Gonzalez's statement -- that Betancourt had several weeks earlier shot someone. See Supp. to Pet., Dkt. no 13.

On October 31, 2013 Judge Caracappa issued a Report recommending denial of Colon's habeas petition. On November 13, 2013, Colon timely filed three objections to Judge Caracappa's Report and Recommendation.

For the reasons set forth below, we will sustain Colon's Confrontation Clause objection

---

[1] Under 28 U.S.C. § 2241(d), a petitioner may file a petition for a writ of habeas corpus either in the district where he is in custody or the district where he was convicted and sentenced. The statute further provides that the district court for the district where the application was filed may at its discretion transfer the application to the other appropriate district. On June 8, 2011 the Clerk of Court for the Western District of Pennsylvania, where Colon is currently incarcerated, transferred this case to this District, which includes Lehigh County where the crime and trial took place.

and overrule his other two objections.

## II.  **Standard of Review**

A prisoner may object to the conclusion of a Magistrate Judge's report and recommendation within fourteen days of being served.  28 U.S.C. § 636(b)(1)(C); Local R. Civ. P. 72.1 (IV)(b).  We must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made [and] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1)(C); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts must afford considerable deference to state court decisions and may grant an application for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court" only if that state-court adjudication  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Supreme Court of the United States has defined clearly established law as "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).

In Williams v. Taylor, 529 U.S. 362 (2000), Justice O'Connor delineated for the Court the degree of deference that § 2254(d)(1) demands, i.e., a state court decision is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this

Court has on a set of materially indistinguishable facts," and a decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 412-13. In short, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable", id. at 411.

As the Supreme Court explained four years later,

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. . . . As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Outside of the review § 2254(d) describes, pre-AEDPA law held that federal courts are without the power to review a state court's interpretation of state law. The Supreme Court emphasized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

III.   <u>Discussion</u>

    A.   <u>Colon's Confrontation Rights and His Co-defendant's Redacted Statement</u>

In his third objection to Judge Caracappa's report, Colon took issue with her conclusion that the trial court did not err in failing to sever his trial because his codefendant Gonzalez's statement was properly redacted and therefore did not violate Colon's constitutional right to confrontation.  Colon Obj. at 23.  Specifically, Colon objected to Judge Caracappa's conclusion that the redaction of Gonzalez's statement and the limiting jury instruction sufficed to avoid a violation of his confrontation rights.  <u>Id.</u> at 24.

The Confrontation Clause of the Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him."  U.S.Const. Amend.VI, cl.5.  Colon's entire defense at trial rested on a claim that he had no prior knowledge of Betancourt's intent to commit an armed robbery, <u>see</u> Tr. at 1210, although he admitted driving the others to the mall and waiting for them in the car with the engine turned off (indeed, one prosecution witness supported his statement to police that he did not leave the car and that there was no one else in the car with him).  <u>Id.</u> at 1210.  Therefore, the ultimate issue for Colon at trial was what he knew and when he knew it.

Neither Colon nor Gonzalez testified.  In a mid-trial hearing about each defendant's prior statements to police, held outside the jury's presence, the judge overruled both defendants' lawyers' objections that portions of each defendant's statement violated the Confrontation Clause by implicating the other defendant.  The judge held there was no confrontation-right violation because both statements were redacted, <u>see</u> Tr. at 736-780. Specifically, Gonzalez's statement was redacted by replacing Colon's name with the words "another person" or, more often, "<u>the</u>

other person," <u>Colon</u>, 846 A.2d at 752 (emphasis added); <u>see</u> <u>also</u> Gonzalez Stmt. <u>passim</u>.

Toward the end of the trial, Detective Procanyn read co-defendant Gonzalez's entire 95-page

statement into the record.  Tr. at 846, 857.  As to the existence of an accord between the co-

defendants before the crime, that statement included the following exchange:

| | |
|---|---|
| D.A. Martin: | Ah, the group of you go up there, why did you go to the mall? |
| Gonzalez: | We, [Eliut] said he was gonna rob somebody. |
| D.A. Martin: | Okay. What was, what was he gonna rob them of? |
| Gonzalez: | I, I don't know. I think either their purse or, I didn't know… |
| D.A. Martin: | How about a car? He told you he was gonna rob a car. |
| Gonzalez: | Nah. |
| D.A. Martin: | Told you he wanted a car. |
| Gonzalez: | No, he didn't even tell me. No, for real… [U/I] |
| Det. Procanyn: | Think of this, why is another person driving [Eliut]'s car when the only person who ever drives the Honda is [Eliut], now think of that before you answer the question, why did you go to the mall? Think about that, right? Think of the conversation. You guys talked about it going up to the mall. You're not gonna tell me a group of guys sitting in the car didn't say a word in the car. You guys all talked. You knew what the hell was gonna happen, didn't ya? |
| Gonzalez: | Not really. |
| Det. Procanyn: | You, what do you mean not really? |
| Gonzalez: | Not really, the, the gun all that, I knew he was gonna look, I thought, what I thought [Eliut] was gonna do is grab her purse or grab somebody's purse and then that's it. |
| Det. Procanyn: | Did he tell you that in the car on the way up? |
| Gonzalez: | He told me that he was gonna rob somebody's purse and stuff like that. |
| Det. Procanyn: | He told you that in the car while you were going up to the mall? |
| Gonzalez: | Yeah. |
| Det. Procanyn: | The other person heard that too? |
| Gonzalez: | Yeah. |

Gonzalez Stmt. at unnumbered pgs. 15-16.

Because neither defendant testified, the statement was the only direct evidence

incriminating Colon as a co-conspirator.

On direct appeal the Pennsylvania Superior Court rejected Colon's claim that Gonzalez's

redacted statement was prejudicial to Colon because its admission violated Colon's right to

confrontation.  Colon, 846 A.2d at 751.

At issue for us is whether the Pennsylvania Superior Court's denial of this claim was an unreasonable application of federal law as the Supreme Court established it.  Judge Caracappa concluded that the Pennsylvania Superior Court's decision was not contrary to, or an unreasonable application of, federal law because the Superior Court found that the trial court properly admitted the redacted statement by applying Supreme Court precedents.  R&R at 12, 13.  Upon de novo review of the trial transcript, we part ways with Judge Caracappa as to Gonzalez's redacted statements and the Superior Court decision.

Three Supreme Court decisions govern the admissibility of a non-testifying co-defendant's statements in a joint trial to ensure that the co-defendant's Confrontation rights are not impaired and the benefits of a joint trial are not sacrificed.  See Bruton v. United States, 391 U.S. 123, 134 (1968) ("Joint trials . . . conserve state funds, diminish inconvenience to the witnesses and public authorities, and avoid delays in bringing those accused of crime to trial.") . In general, the Supreme Court presumes "the jury can and will follow the trial judge's instructions to disregard" information about one co-defendant in the other's statement, id. at 135. But rather pointedly Bruton recognized that limiting instructions were a constitutionally insufficient safeguard when

> the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.  It was against such threats to a fair trial that the Confrontation Clause was directed.

Id. at 135-36.  In Bruton the Court held that a criminal defendant is deprived of his right to

confrontation when a non-testifying co-defendant's confession facially incriminates him, regardless of whether the trial judge has given the jury a limiting instruction.

In Richardson v. Marsh, 481 U.S. 200 (1987), the Court narrowed Bruton's holding by permitting redaction of a non-testifying co-defendant's statement that eliminates "any reference to his or her existence", id. at 211, because jurors would likely follow a limiting instruction where the confession only becomes incriminating when "linked with evidence introduced later at trial," id. at 208.  Thus, Richardson held there was no Confrontation Clause violation when redaction eliminated all reference to a defendant's presence and her own testimony placed her on the scene.  Id. at 211.

Finally, in Gray v. Maryland, 523 U.S. 185 (1998), the Supreme Court considered whether a defendant's rights under the Confrontation Clause were violated when the prosecution incriminates a defendant through a co-defendant's statement by the stratagem of substituting a blank or the word "deleted" for the proper name.  The Supreme Court held that such a redaction violates the Confrontation Clause when it incriminates the co-defendant:  "By encouraging the jury to speculate about the reference, the redaction may overemphasize the importance of the confession's accusation -- once the jurors work out the reference."  Id. at 193.

Importantly, Gray also distinguished between those statements that permissibly "incriminate inferentially" without referring directly to the co-defendant -- and become incriminating only when linked with evidence introduced later at trial -- from those impermissible statements that "despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately," id. at 195, 196.  To distinguish between such statements, courts must look to "the

10

kind of, not the simple fact of, inference" that a jury may make from the redacted statement, id.

at 196 (emphasis in original). "[I]nference pure and simple cannot make the critical difference."

Id. at 195.

The Pennsylvania Superior Court relied on Bruton, Richardson, and Gray, as well as the

leading Commonwealth cases -- in particular Commonwealth v. Travers, 768 A.2d 845 (Pa.

2001) -- to reach its decision in Colon. The Superior Court noted that the Pennsylvania Supreme

Court in Travers approved the use of the words "the other man" as a substitute for the

defendant's name and that "'the redacted statement could become incriminating only through

independent evidence introduced at trial which established the defendant's complicity and, even

then, only if it is assumed that the jury ignored the court's charge'", Colon, 846 A.2d at 751

(citing Travers, 768 A.2d at 851).

Turning to Colon's appeal, the Superior Court described the redacted statement in broad

strokes:

> We first note that we have reviewed co-defendant Gonzalez's
> statement and find that Gonzalez never referred to appellant by his
> given name. The examining officer and Gonzalez repeatedly used
> terms such as "he and another person," "another person," "they,"
> "someone else," "the other person," and "you guys.". . . . The
> statement given by Gonzalez describes a conspiracy between three
> individuals. Gonzalez occasionally refers to one of the other
> individuals as "Eliut" or "E," but Gonzalez never specifically
> identifies appellant. . . . The jury can only find that appellant was
> "the other person" through independent evidence. . . . Furthermore,
> the trial judge provided the jury with an appropriate limiting
> instruction not once, but twice.

Id. at 752. It concluded, "We do not see how this statement, on its face, powerfully incriminates

the appellant," id.

The Pennsylvania Superior Court's denial of Colon's Bruton claim constituted an

unreasonable application of federal law as the United States Supreme Court established it.  The "unreasonable application" prong of AEDPA applies when a "'state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts." Adamson v. Cathel, 633 F.3d 248, 255-56 (3d Cir. 2011) (quoting Wiggins v. Smith, 539 U.S. 510, 520 (2003)).

As Justice Stevens helpfully cautioned, "Bruton has always required trial judges to answer the question whether a particular confession is or is not 'powerfully incriminating' on a case-by-case basis; they should follow the same analysis whether or not the defendant is actually named by his or her codefendant." Richardson, 481 U.S. at 214 (Stevens, J., dissenting).

Following the Supreme Court's teaching, our Court of Appeals has thrice held that the use of a generic term in place of a defendant's name is by no means a talismanic stratagem that will always satisfy Bruton.

For example, in Vasquez v. Wilson, 550 F.3d 270 (3d Cir. 2008), our Court of Appeals held that a redacted statement replacing a defendant's name and that of an absent third party with "my boy" and "the other guy" in a two-person murder trial violated the defendant's confrontation rights because the jury would conclude the present defendant, and not the absent third party, was the shooter.  Id. at 281.

Similarly, that Court found a Bruton violation where the state trial court replaced two defendants' names with the words "the other two."  Eley v. Erickson, 712 F.3d 837, 860-61 (3d Cir. 2013).  In Eley, our Court of Appeals also found the Pennsylvania Superior Court unreasonably applied Bruton when it affirmed the trial court on the basis that the redacted statement did not "refer to" the defendant:  "If -- as we suspect -- the Superior Court affirmed the

trial judge through a mechanical application of the <u>Travers</u> bright-line rule, it thereby

unreasonably applied clearly established federal law under <u>Bruton</u> and its progeny."  <u>Id.</u> at 861.

Just last August, our Court of Appeals held a non-testifying co-defendant's statement

substituting the defendant's name with "someone I know" and "the driver" and "the other guy"

impermissibly violated the defendant's confrontation rights that he was the driver in a robbery

because the inference of the redaction was "tantamount to using the [defendant's] name."

<u>Washington v. Secretary Pennsylvania Dept. of Corrections</u>, 726 F.3d 471, 479 (3d Cir. 2013).

Judge Fisher for the panel in <u>Washington</u> pointedly held that the Superior Court had not taken "a

reasonable view of the law" when it adopted

> a blanket rule, derived from <u>Travers,</u> that any redaction that would
> require a juror to consider an additional piece of information
> outside the confession in order to identify the coconspirator being
> referred to automatically falls inside the realm of <u>Richardson</u>.

<u>Id.</u> at 477.

In sum, <u>Vasquez</u>, <u>Eley</u> and <u>Washington</u> read <u>Bruton</u>, <u>Richardson</u> and <u>Gray</u> as rejecting

redaction as a panacea to cure all <u>Bruton</u> ills.

Here, the <u>Travers</u> "blanket rule" as applied to Colon's appeal obscured the trial judge's

failure to consider the powerfully incriminating nature of Gonzalez's redacted statement.

Although the Superior Court suggested the redacted statement was replete with ambiguous terms

("another person," "they," "someone else"), in actual context the redaction in the critical passage

cited above simply replaced Colon's name with "the other person."  Because Colon admitted to

being in the car with Gonzalez and Betancourt on the way to the mall, that alteration was

tantamount to the impermissible substitution in <u>Gray</u>. Gonzalez's unconfronted statement went to

the heart of the substantive offenses with which Colon was charged -- conspiracy to commit

13

criminal homicide, murder in the third degree, robbery and robbery of a motor vehicle.  As a result, contrary to the Superior Court's assertion that only "independent evidence" would finger Colon, the redacted statement itself did the job.

Further, the Superior Court's application of Supreme Court precedent was unreasonable because the Superior Court's reliance on Travers misstated the sensitivity a court must apply after Gray for the kind of inferences a statement permits jurors to make in actual trial contexts. A court reviewing a Bruton claim should review the record before the trial court at the time that court overruled the defendant's objections.  See Vasquez, 550 F.3d at 277.  As our Court of Appeals has held, "no reasonable reading of Bruton, Richardson, and Gray can tolerate a redaction that the trial judge knew at the time of introduction would be transparent to the jurors," Washington, 726 F.3d at 480.  Because Colon admitted to being in the car and could only have been inferred to have been "the other person" present and one of "you guys" in the incriminating conversation recounted above, the redacted statement created the unmistakable risk that the jury could have considered Gonzalez's statement as evidence of Colon's guilt despite the judge's admonition, Tr. 871 and 1271.  Therefore, the jury here could immediately make precisely the kind of inference that animated Bruton, see Gray, 523 U.S. at 196, because there was no question as to the identity of "the other person" implicated in Gonzalez's statement of Betancourt's hearsay intentions.

We therefore find that this redaction was impermissibly "tantamount to using [Colon's] name," Washington, 726 F.3d at 480, and in denying Colon's claim under Bruton and its progeny the Superior Court unreasonably applied federal law as the Supreme Court established it in Bruton, Richardson and Gray.

14

But our inquiry does not end there.  A <u>Bruton</u> violation constitutes reversible error only if we determine that the admission of the co-defendant's statement was not harmless beyond a reasonable doubt, <u>see</u> <u>Harrington v. California</u>, 395 U.S. 250, 254 (1969).  An error is not harmless if it had a "substantial and injurious effect," <u>see</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 121-122 (2007).   Therefore, if we find the error had little or no influence on the jury, we must uphold the state-court judgment.  <u>Washington</u>, 726 F. 3d at 481.

We must therefore independently analyze the harm the <u>Bruton</u> error caused.   <u>Fry</u>, 551 U.S. at 121 (holding that in a § 2254 proceeding, a court must independently assess the prejudicial impact of constitutional error in a state-court criminal trial whether or not the state appellate court recognized the error and reviewed it).  Our Court of Appeals has held violations of the Confrontation Clause to be harmless error where there was such extensive evidence of the defendant's guilt that the error could not have had a substantial and injurious effect or influence on the jury's verdict, <u>see</u> <u>Bond v. Beard</u>, 539 F.3d 256, 276 (3d Cir. 2008) (finding harmless error where an independent eyewitness had identified petitioner and he had confessed, though he argued the confession was coerced).  On the other hand, a petitioner could show "enough of a probable impact on the jury to create 'grave doubt' about the consequences of the Confrontation Clause error" when an unconfronted statement was the only significant evidence against the defendant and the non-testifying co-defendant suffered from credibility problems, <u>see</u> <u>Washington</u>, 726 F.3d at 483.  Harmless error analysis, in short, does not reassess the state court evidence, only its sufficiency.

The jury here heard Colon's statement acknowledging his presence in the car throughout the botched robbery and murder and his awareness on the way to the mall that his friend "needed

money". Tr. at 1205, 1210.  Defense counsel also conceded in closing that Colon had given Betancourt the gun two weeks before the botched robbery and murder.  Id. at 1207.

But the Commonwealth needed to show more to prove Colon was aware of Betancourt's intent prior to the botched robbery and murder.  To sustain a conviction for criminal conspiracy the Commonwealth must establish that a defendant entered into an agreement to commit or aid in an unlawful act with another person, with a shared criminal intent and that an overt act was done in furtherance of the conspiracy.  Commonwealth v. Rios, 684 A.2d 1025, 1030 (Pa.1996). Because it is difficult to prove an explicit or formal agreement, the agreement may be established by circumstantial evidence, such as by "the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators," Commonwealth v. Spotz, 716 A.2d 580, 592 (Pa. 1998).  Evidence of a defendant's association with the perpetrator of the crime, his presence at the scene or knowledge of the crime cannot establish an unlawful agreement, Commonwealth v. Murphy, 844 A.2d 1228, 1238 (Pa. 2004), although, taken together, such evidence "may coalesce to establish a conspiratorial agreement beyond a reasonable doubt," Commonwealth v. Devine, 26 A.3d 1139, 1147 (Pa. Super. 2011).

Here, no other circumstantial evidence indicated Colon's agreement to aid in an unlawful act or his adoption of a shared criminal intent.

Far from being harmless error, the trial transcript reveals how critical Gonzalez's redacted statement was to the jury's verdict.  It was the only evidence to show Colon's part in, and awareness of, the conspiracy.  In his closing, the prosecutor stressed that very evidence:

> Eliut told Joey on the way to the mall that he was going to rob somebody's purse and stuff like that, told him that in the car on the way to the mall with the other person in the car. Come back to that. Frankie Colon sure does distance himself from anything in this

16

> case, doesn't he? But Frankie Colon admits he was in the car.
> Frankie Colon didn't hear anything, he didn't see anything, he
> didn't participate in anything, and he didn't know he was supposed
> to be the get-away driver. He just stayed in the car waiting for his
> two friends to come back from shopping at Macy's. Shopping at
> Macy's for what, 40 minutes? Longer, in fact.

Tr. at 1236-37.

More consequential still is that in the midst of deliberations -- indeed just three hours before they returned with a guilty verdict -- the jury asked for the entire critical passage from Gonzalez's statement to be reread to them.  Tr. at 1355 to 1358.  There can in this context be no doubt about the statement's materially injurious effect on the jury's deliberations.

The Superior Court thus erred in its Confrontation Clause analysis.  An improperly redacted statement directly implicated Colon and so the error was not harmless and thus was sufficiently injurious to warrant underline habeas relief.

For the sake of completeness, we will also consider Colon's two other objections.

### B.    __The Allegedly Exculpatory Statement__

Colon also claims that the trial court should have permitted the introduction at trial of evidence from Gonzalez's testimony at his aborted guilty-plea hearing.  Obj. at 3.  Gonzalez testified at his September 18, 2002 plea hearing that Colon was not present during the robbery planning and only learned of the plans later from Gonzalez -- testimony in conflict with Gonzalez's prior statements to the police -- and the District Attorney's Office immediately withdrew the plea deal as it had been conditioned on Gonzalez cooperating and testifying truthfully against Colon and Betancourt at trial. R&R at 6.  At trial, the judge refused to allow Colon to introduce this allegedly exculpatory testimony as former testimony by an unavailable

declarant, reasoning that the Commonwealth did not have an "opportunity and similar motive to develop" Gonzalez's testimony at the plea hearing.  Id.

Pennsylvania Rule of Evidence 804(b)(1), which is identical to Federal Rule of Evidence 804(b)(1), provides that former testimony is not excluded by the rule against hearsay if the declarant is unavailable to testify and where former testimony "was given as a witness at a trial, hearing, or lawful deposition" and "is now offered against a party who had. . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination."  As a general rule, "[t]he admission or exclusion of evidence is a matter particularly suited to the broad discretion of the trial judge," In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990), and therefore federal habeas corpus review is not available to determine the correctness of a state evidentiary ruling, see Estelle v. McGuire, 502 U.S. 62, 67-68 (1991), unless the ruling "so infuse[s] the trial with unfairness as to deny due process of law", Lisenba v. People of State of California, 314 U.S. 219, 228 (1941).

Here, Judge Caracappa concluded that the trial judge was not in error when he found that Gonzalez's plea testimony did not meet a hearsay exception, and that Colon's trial was not infused with unfairness, because the allegedly exculpatory testimony contradicted Gonzalez's prior statements to police and his initial guilty plea testimony. R&R at 8 and 9.  We agree.  As our Court of Appeals has explained, testimony offered under Federal Rule of Evidence 804(b)(1)'s hearsay exception must be accompanied by proof that the declarant is unavailable to testify; that the testimony was taken at a "hearing, deposition, civil action or proceeding"; and that the party against whom the testimony is offered "had an opportunity to test the testimony by examination." Brown v. Muhlenberg Tp., 269 F.3d 205, 227 (3d Cir. 2001).

18

A plea hearing is not such a proceeding because the defendant is not generally subject to cross-examination -- indeed, as Gonzalez's attorney, Brian M. Collins, Esq., noted in the plea hearing when the district attorney's questioning grew increasingly contentious: "Your Honor, he is providing the truth as he knows it, and he is under -- This is getting into a cross-examination situation with the District Attorney."  Tr. of aborted guilty plea at 62.

Nor is the prosecutor generally an "opponent" under those circumstances.[2]  On the contrary, it is well-established that plea agreements are analyzed under contract law standards, United States v. Williams, 510 F.3d 416, 422 (3d Cir. 2007), where the "meeting of the minds" that necessarily undergirds a contract runs counter to any notion of opposition.

Further, as other Courts of Appeals have noted with regard to Rule 804(b)(1), the fundamental purpose of a prior opportunity to cross-examine a defendant when admitting evidence as a hearsay exception is to ensure that the former testimony was endowed with some "indicia of reliability" -- some basis for the trier of fact to evaluate the truth of the prior statement, see, e.g., United States v. Garcia, 117 Fed. Appx. 162, 164 (2d Cir. 2004) (internal citation omitted).  Gonzalez's inconsistent statements in the course of the plea hearing do not

---

[2] See, e.g., United States v. DiNapoli, 8 F.3d 909, 913 (2d Cir. 1993):

> The situation is not necessarily the same where the two proceedings are different in significant respects, such as their purpose or the applicable burden of proof. . . . If a prosecutor is using the grand jury to investigate possible crimes and identify possible criminals, it may be quite unrealistic to characterize the prosecutor as the "opponent" of a witness's version. . . . Even if the prosecutor displays some skepticism about particular testimony. . . that does not mean the prosecutor has a motive to show the falsity of the testimony, similar to the motive that would exist at trial if an indictment is returned and the witness's testimony is presented by a defendant to rebut the prosecutor's evidence of guilt.

provide any such "indicia of reliability" and therefore the state court's ruling did not deny

Colon's due process rights.[3]

### C.    Ineffective Assistance of Counsel

Finally, Colon objects to Judge Caracappa's conclusion that he was not prejudiced by

hearsay evidence that Eliut Betancourt, the co-conspirator tried separately, had used the same

gun -- which had earlier been in Colon's possession -- in an unrelated killing weeks before the

murder at issue. Obj. at 13.  In his objection Colon contends that his trial counsel was ineffective

for failing to object to the introduction of Gonzalez's redacted statement that Betancourt had told

Gonzalez he'd used the gun in a prior shooting, testimony the trial court stated "proved critical to

the Commonwealth's need to establish [a] chain of custody of the alleged murder weapon."  Id.

at 19.

The Superior Court found that Colon waived the prejudice argument because trial counsel

made an oral motion in limine to exclude the testimony but failed to make further objections on

the record once it was denied.  Colon, 846 A.2d at 752.  The Superior Court also noted that the

trial judge made two limiting instructions, one before each defendant's statement was read, and

one later in the jury charge.  R&R at 13.

Judge Caracappa found that the Superior Court's rejection of Colon's claim was not

contrary to, or an unreasonable application of, clearly established law, as determined by the

Supreme Court.  Id.  Separately, she also found that Colon's Confrontation Clause rights under

---

[3] Gonzalez's vacillations and lack of credibility during the aborted plea hearing fortify our holding regarding his unconfronted statement undermining the fairness of Colon's trial.

Bruton and its progeny were not violated because the alleged hearsay statement made no reference to Colon and he was not involved in the prior shooting -- nor was there any suggestion of such at trial.  Id.

Colon, finding the door barred, sought to open a window by arguing in his objections that trial counsel was deficient under Strickland v. Washington, 466 U.S. 668 (1984), which governs ineffective assistance of counsel claims.  Under the familiar Strickland standard, a petitioner must establish both (1) that counsel's performance was deficient, i.e., unreasonable under prevailing professional standards,[4] and (2) prejudice, i.e., that but for counsel's ineffectiveness, the outcome of the proceeding would have been different.  Id. at 687.

Here, because the actual testimony was redacted to omit any direct reference to Colon as the original gun owner or the person to whom the gun was returned, see Gonzalez Stmt. at 44, 46, 47, 55, 56, and there was no allegation of Colon being involved in the prior shooting, Colon cannot show how counsel's performance in failing to object was unreasonable under prevailing standards.

**IV.**   **Conclusion**

For the foregoing reasons we will sustain petitioner's objection regarding his Bruton claim, but we will overrule his other two objections and, with respect to those objections,

---

[4] Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689.

approve and adopt the Report and Recommendation.  We will therefore grant the habeas petition and issue a conditional writ of habeas corpus obliging the Commonwealth of Pennsylvania to either release Colon or retry him within 120 days.[5]

BY THE COURT:

/S/ STEWART DALZELL, J.

---

[5] When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days from the date on which the trial court's order is filed.  Pa. R. Crim. P. 600 (B)(4) (revised in 2012).  In exercising our discretion to set the period of release or order a new trial we look to the established state procedural rule.